## S11A1835. WILLIAMS v. THE STATE.
(721 SE2d 883)

THOMPSON, Justice.

Appellant Bryant Williams was found guilty of, inter alia, the malice murders of Linda Mathis, and her sister, Marlow Mathis, and sentenced to life in prison without parole.[1] His motion for new trial was denied, and he appeals. For the reasons that follow, we affirm the

[1] The crimes occurred on April 30, 2008. Appellant was indicted in December 2008 by a McDuffie County grand jury on charges of malice murder (two counts), felony murder (two counts), aggravated assault (two counts), possession of a firearm during the commission of a crime (three counts), and feticide (two counts). Pursuant to agreement, appellant waived his right to a jury trial in exchange for the State's agreement not to seek the death penalty. After

denial of his motion for new trial.

1. The trier of fact was authorized to find that on the day of the crimes, appellant argued with Linda Mathis, his girlfriend of several years, and demanded she move out of his apartment before he returned from work. He went home early from work, and finding the victims still in the apartment, he fatally shot Linda three times, twice in the head and once in the neck, and shot Marlow, killing both her and her 25-week-old fetus. Appellant then called 911 and told the operator he had shot two women at his apartment and they required medical attention. Appellant later admitted to other witnesses and GBI agents that he shot the victims.

Construed in the light most favorable to the verdicts, the evidence was sufficient to enable the trial court to determine appellant was guilty of the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Tarver v. State*, 278 Ga. 358 (5) (602 SE2d 627) (2004) (evidence sufficient to find aggravating circumstances under OCGA § 17-10-30 (b)).

2. Appellant waived his *Miranda* rights and agreed to talk to GBI agents after his arrest. See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). During this custodial interrogation, appellant made several incriminating statements he now contends should not have been admitted at trial because he unequivocally asserted his right to remain silent during the interview and questioning did not cease.

The admissibility of the challenged portion of appellant's statement depends upon whether appellant "articulated a desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent." (Punctuation omitted.) *Perez v. State*, 283 Ga. 196, 200 (657 SE2d 846) (2008). The record in this case is replete with evidence that appellant was emotionally distraught after the shootings, at various times sobbing and lying on the ground. While appellant was being questioned about who was in the house when he returned from work, appellant responded, "Both of

---

a stipulated bench trial, appellant was found guilty on February 8, 2011, of all charges except one count of feticide and the court found the existence of statutory aggravating circumstances for each of the malice murder counts. On February 15, 2011, he was sentenced to life without parole for the malice murder of Linda Mathis, life for the malice murder of Marlow Mathis, life for the feticide count, and five years to serve for each count of possession to run consecutively to the life sentences and to each other. The remaining felony murder and aggravated assault convictions were merged and vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). A motion for new trial was filed on March 2, 2011 and denied on June 20, 2011. Appellant filed a notice of appeal on June 29, 2011. The appeal was docketed in this Court for the September 2011 term and submitted for decision on the briefs.

them." When asked to specifically identify the victims by name, appellant stated, "I can't do it, sir. I can't go on answering these questions." The GBI agent testified he did not interpret these statements as a request for the interview to stop but that they reflected appellant's emotional state and how difficult it was for him to go back through what he had done. Appellant then continued to answer the agent's questions without hesitation.

Viewed in context, we agree with the trial court that appellant's statement "I can't go on answering these questions" was not an unambiguous and unequivocal assertion of the right to remain silent. Rather, like the accused's statement, "I don't want to say nothing," in *Weaver v. State*, 288 Ga. 540, 544 (705 SE2d 627) (2011), it "was part of the 'give and take' of interrogation and may also be 'reasonably understood to express appellant's internal conflict and pain in being asked to recount all that had happened.' [Cit.]" (Punctuation omitted.) Because the statement was not an unequivocal assertion of the right to remain silent, agents had no obligation to cease the interview and it was not error to admit appellant's incriminating statements into evidence. See id.; *Turner v. State*, 287 Ga. 793 (3) (700 SE2d 386) (2010) (statement "if y'all are going to try to do me like that, I don't want to talk no more" was equivocal invocation of right); *Perez v. State*, supra, 283 Ga. at 200 ("I can stop the interrogation . . . [r]ight or no?" was at best ambiguous assertion of right).

3. Appellant contends the trial court erred by admitting into evidence under the necessity exception to the hearsay rule the testimony of Angelica Wynn regarding statements made to her by Linda Mathis. See OCGA § 24-3-1 (b). Even assuming the trial court erred by admitting the challenged testimony, we conclude the error was harmless because other admissible evidence, including appellant's own statements to others, covered the same subject matter as the statements made by the victim to Wynn. *Gardner v. State*, 273 Ga. 809 (7) (546 SE2d 490) (2001); *Smith v. State*, 266 Ga. 827 (4) (470 SE2d 674) (1996).

4. Finally, appellant contends the State failed to prove a proper chain of custody for the bullets and bullet casings found at the scene of the crimes. We disagree. Even assuming a chain of custody needed to be established in this case, the record shows the challenged evidence was collected, labeled, sealed, and transported to the GBI evidence room by Agent Foster. Agent Fritsch subsequently retrieved these items from the evidence room and transported them to the crime lab for evaluation. Numerous witnesses, including Foster, Fritsch, and the medical examiner, identified these bullets and casings at trial. Based on this evidence, we conclude the State established with reasonable certainty that the bullets and bullet

casings introduced into evidence were the same ones discovered at appellant's apartment or removed from the victims' bodies and had not been tampered with or replaced by similar bullets. See *Kempson v. State*, 278 Ga. 285, 286-287 (3) (602 SE2d 587) (2004); *Baker v. State*, 250 Ga. 671 (1) (300 SE2d 511) (1983). Accordingly, it was not error to admit these items into evidence at trial.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 23, 2012.

*Harold W. Wallace III*, for appellant.

*Dennis C. Sanders, District Attorney, Durwood R. Davis, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.